IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JEREMY BLAIN,** | : CIVIL ACTION NO. 3:23-CV-229 |
| **Plaintiff** | : (Judge Neary) |
| v. | : |
| **RAUSCH CREEK GENERATION LLC** | : |
| **Defendant** | : |

### **MEMORANDUM**

Federal and state laws protect certain contours of at-will employment. This case concerns three such laws: (1) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (2) the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, *et seq.*; and (3) the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Plaintiff Jeremy Blain sued his former employer, Rausch Creek Generation, LLC, alleging it violated the ADA and the PHRA by failing to accommodate his disability and firing him because of it, and interfered with his right to obtain leave under the FMLA. (Doc. 1). Following the completion of discovery, Rausch Creek Generation has moved for summary judgment on all claims. (Doc. 54). Because no genuine dispute of material fact exists, the court will grant this motion.

I. **Factual Background & Procedural History**[1]

Blain was formerly employed as a heavy equipment operator at a power plant operated by Rausch Creek Generation. (Doc. 56-2 ¶¶ 1-3). "Rausch Creek Generation is a subsidiary of Rausch Creek Land, L.P., which is the ultimate corporate parent to several additional 'Rausch Creek' entities, such as Rausch Creek Trucking, LLC." (Id. ¶ 103). Kirk Klinger, who served as Rausch Creek Generation's fuel manager, was Blain's supervisor from 2019 until Blain was terminated on April 21, 2021. (Id. ¶¶ 5, 10). From January 2020 to January 2021, Blain had 35 unexcused or unscheduled absences, and Klinger advised him to get his "act together" due to his "pretty poor" attendance. (Id. ¶¶ 22, 24). There is no evidence in the record that Blain attempted to justify or explain these absences and link them to any medical conditions during this period.

Blain suffers from diabetes and a gallbladder condition. (Id. ¶ 25). These health conditions seemingly intensified in mid-February 2021, when, over the course of several days, Blain and his wife texted Klinger to take time off to go to the emergency room due to his abdominal pain. (Id. ¶¶ 30-36). Blain was on leave from

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 56-2, 60). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

February 11, 2021, through April 21, 2021. (Id. ¶ 26). His surgeon, Dr. Kristina Thornburg, informed Blain on February 19, 2021, that he would not require gallbladder surgery. (Id. ¶ 40).

Blain's recollection of his conversation with Dr. Thornburg is profoundly unclear. At one point in his deposition, Blain denied discussing his ability to return to work with Dr. Thornburg. (Id. ¶ 42). At another point, he recounted that he did ask Dr. Thornburg whether he could return to work, to which she asked him if he wanted a doctor's note that either permitted him to return to work or excused his absences. (Id. ¶ 43). He maintained that he did not remember whether he told Dr. Thornburg that he does not want such a note or if he simply did not ask for it. (Id.). At yet another point, Blain testified that he did not ask Dr. Thornburg for a note excusing his absences because he "didn't think it was necessary at the time." (Id. ¶ 44).

What is clear from the record is that Dr. Thornburg referred Blain to a gastroenterologist, Dr. Glenn Freed, regarding his abdominal discomfort. (Id. ¶¶ 47, 52). Blain met with Dr. Freed on March 3, but did not ask him whether the physician believed Blain could return to work, nor did he ask Dr. Freed for a note excusing him from work. (Id. ¶¶ 52-53).

On March 12, over a month after Blain had been on leave, Klinger asked him for a doctor's note to excuse him from work. (Id. ¶ 56). Blain told Klinger he would provide a note within a week, but did not do so and did not otherwise follow up with Klinger during that week. (Id. ¶¶ 58-59). On March 19, after Klinger followed up with him, Blain provided a doctor's note from Dr. Freed. (Id. ¶¶ 60-62). The note

3

stated: "The above patient Jeremy Blain is under my care and since February 27, 2021, patient has been unable to work due to symptoms. Please excuse him from work pending the results of his upcoming procedure." (Id. ¶ 64). Blain underwent a gastric emptying scan—the procedure to which Dr. Freed alluded in his note—on March 26, which came back with normal results. (Id. ¶¶ 66, 68). Though Blain was informed that same day by "[t]he person who conducted the exam" that his results were normal, he did not provide this information to Klinger "[b]ecause it wasn't my job to tell him that. It was the doctor's job." (Doc. 60-8 ("Blain Dep.") 170:22-172:24). Blain claims the individual who informed him about his results "was not supposed to tell me my results. He said my fault, so I said okay." (Blain Dep. 172:16-18.)

On March 31, Klinger asked Blain for an update on his ability to return to work, and Blain inaccurately responded he had not received the test results yet. (Id. 174:17-175:24). On April 12, Klinger again followed up, and Blain informed Klinger he should be back at work by Monday, April 19. (Doc. 56-2 ¶ 76). Blain stated his basis for this projection may have been Dr. Freed informing him that he "should be able to return to work after the results came back from whatever was done." (Blain Dep. 176:7-24). When Blain contacted Dr. Freed's office on April 17 or 19, he learned Dr. Freed was away for two weeks, though he was unclear on which date he specifically learned this information. (Id. 180:4-181:19). He informed Klinger of this on April 19. (Doc. 56-2 ¶ 83). Even though he admits all that prevented him returning to work after April 12 "[w]as a note," Blain did not ask Dr. Freed's office to schedule him with another, available doctor, nor did he reach out to his primary

4

care doctor or any other health care professional, to obtain such a note. (Id. ¶¶ 85-87; Blain Dep. 182:4-25).

By April 21, Klinger decided he had seen enough. It had been almost a month since Blain's procedure, and he still had not provided a doctor's note either clearing him for work or justifying his absence (Doc. 56-2 ¶ 90). Klinger called Blain on that date to terminate Blain's employment, and both parties agree Blain's termination was the result of his "excessive absenteeism." (Doc. 56-2 ¶¶ 10, 89; Doc. 60 ¶ 10). Blain subsequently produced a note from Dr. Freed on April 30 clearing him to return to work, but he was not reinstated. (Docs. 60-11, 60-12).

Blain filed his complaint against Rausch Creek Generation on November 1, 2022. (Doc. 1). After discovery completed, Rausch Creek Generation filed a motion for summary judgment on May 13, 2024. (Doc. 54). The motion is fully briefed and ripe for disposition. (Docs. 55, 61, 64).

## II.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most

favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case *on which that party will bear the burden of proof at trial.*'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court

6

should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

This court has wide discretion to sanction noncompliance with local rules, including Local Rule 56.1, which serves the important purpose of organizing the summary judgment record and facilitating efficient disposition of Rule 56 motions. See Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613-14 (3d Cir. 2018). Permissible sanctions for failure to strictly comply with Local Rule 56.1 include striking nonresponsive statements of fact or deeming a moving party's statement to be unopposed when not properly controverted. See id.; see also FED. R. CIV. P. 56(e); M.D. PA. L.R. 56.1. In resolving the instant motion, the court has reviewed the parties' statements and has independently considered the entire record.

### III. Discussion

Blain raises five claims in his complaint: (1) discrimination/retaliation under the ADA; (2) failure to accommodate under the ADA; (3) interference under the FMLA; (4) discrimination/retaliation under the PHRA; and (5) failure to accommodate under the PHRA. (See generally, Doc. 1). None survive summary judgment.

#### A. ADA/PHRA Claims

Both the ADA and the PHRA prohibit employers from discharging employees due to their disabilities or retaliating against the employees for engaging in statutorily protected activities, such as requesting or using reasonable accommodations. See 42 U.S.C. § 12112(a), 12203(a); 43 P.S. § 955(a), (d). Courts analyze claims under both statutes using the burden-shifting framework articulated

in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Fowler v. AT&T, Inc., 19 F.4th 292, 298 (3d Cir. 2021); Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002).

At step one of this framework, the plaintiff must establish a prima facie case of discrimination or retaliation. See McDonnell Douglas, 411 U.S. at 802. He can do so in a discrimination case by presenting sufficient evidence that (1) he has a disability within the meaning of the ADA, (2) he was qualified to perform the essential functions of her job, with or without reasonable accommodations, and (3) he suffered an adverse employment action as a result of discrimination. Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 346 (3d Cir. 2022) (quoting Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015)). If he brings a retaliation claim, the plaintiff must establish that (1) he engaged in a protected activity and the retaliator knew of the involvement; (2) the defendant took adverse action either during or after the protected activity that was sufficient to deter a person of ordinary firmness from engaging in the protected activity; and (3) there is a causal connection between the protected activity and the adverse action. Derrick F. v. Red Lion Area Sch. Dist., 586 F. Supp. 2d 282, 300 (M.D. Pa. 2008); see also Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000).

"Close 'temporal proximity,' between the protected status or action by the employee and the adverse action by the employer, is suggestive but not determinative of causation." Id. (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)); see also Quick v. GEO Grp., Inc., 2020 WL 532343, at *17 (W.D. Pa. Feb. 3, 2020) ("There are two ways to establish a causal connection under

8

the ADA: (1) where the temporal proximity of the alleged disability and the adverse employment action are 'unduly suggestive,' no other evidence is required; or (2) where the timing is not 'unusually suggestive,' but there is other evidence of discrimination or a 'pattern of antagonism.'") (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503–04 (3d Cir. 1997)).

If the plaintiff establishes his prima facie case, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for its decision. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (quoting McDonnell Douglas, 411 U.S. at 802). This burden is "relatively light." Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006). If the employer meets its burden, the plaintiff then must show by a preponderance of the evidence the employer's stated reasons were mere pretext for discrimination. See Fuentes, 32 F.3d at 763.

To demonstrate pretext and defeat summary judgment, a plaintiff must identify evidence that would allow the factfinder to "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." See Shaner, 204 F.3d at 501 (quoting Fuentes, 32 F.3d at 764). The plaintiff may call attention to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons." See Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (quoting Fuentes, 32 F.3d at 764).

Even assuming, without deciding, that Blain could make out a prima facie case, his ADA and PHRA claims fail once the burden shifts to his employer. Blain

9

admits in his Rule 56.1 statement of material facts that he was fired "due to excessive absenteeism." (Doc. 56-2 ¶ 10; Doc. 60 ¶ 10). This admission is well-supported in the record. Over a one-year period, Blain had 35 unexcused or unscheduled absences, and Klinger advised him to get his "act together" due to his "pretty poor" attendance. (Doc. 56-2 ¶¶ 22, 24). Not only does the record demonstrates Blain failed to ever justify these absences, but he also failed to proactively obtain (from either Dr. Thornburg or Dr. Freed) clearance to return to work after his most recent health issues. (Id. ¶¶ 44, 52-53).

Thus, Rausch Creek Generation has provided a "legitimate, non-discriminatory reason" warranting Blain's dismissal. See Fuentes, 32 F.3d at 763 (quoting McDonnell Douglas, 411 U.S. at 802). And because he concedes this justification for his firing, Blain cannot demonstrate his employer's reasoning was pretextual. Nor could he, given the 35 previous unexcused absences and the marked delay in providing documentation to his employer. Therefore, Blain's discrimination and retaliation claims under the ADA and PHRA claims do not survive summary judgment.

Blain's failure to accommodate claims fare no better. These claims arise where an employer either fails or refuses to make a good-faith effort to reasonably accommodate an employee's known disability. 42 U.S.C. § 12112(b)(5)(A). A failure to accommodate claim "may be viewed simply as a type of discrimination claim, where the relevant adverse employment action is the employer's 'refusal to make reasonable accommodations for an employee's disabilities.' Fowler, 19 F.4th at 306 (quoting Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (internal

alterations omitted)). To establish a failure to accommodate claim, "a plaintiff must show that (1) the employer knew about the employee's disability, (2) the employee requested accommodations or assistance, (3) the employer did not make a good-faith effort to assist the employee, and (4) the employee could have been reasonably accommodated." Behm v. Mack Trucks, Inc., No. 22-2223, 2023 WL 3171559, at *2 (3d Cir. May 1, 2023) (citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 772 (3d Cir. 2004)).

As already established, Blain did not suffer disability discrimination under the ADA or PHRA—his employment was terminated due to excessive absenteeism. (Doc. 56-2 ¶ 10; Doc. 60 ¶ 10). In his brief, Blain argues he could have been provided two accommodations: (1) an additional two weeks of unpaid leave to obtain a doctor's note and (2) an allowance to work without the medical release "with the understanding that if Plaintiff could not perform the work, he would have to take leave again." (Doc. 61 at 14). But these arguments fail on two counts.

First, Blain fails to provide record citations that he requested such accommodations from his employer. It is axiomatic that a failure to request an accommodation is fatal to a failure to accommodate claim. See, e.g., Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999) ("An underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied."); Gaston v. Bellingrath Gardens & Home, Inc., 167 F.3d 1361, 1364 (11th Cir. 1999) (observing "the EEOC's interpretive guidelines, issued pursuant to its authority to issue regulations under the ADA, provide that '[i]n general … it is the responsibility of the individual with a

11

disability to inform the employer that an accommodation is needed.'") (quoting 29 C.F.R. pt. 1630 App. § 1630.9).

Second, and to the contrary, the record is replete with evidence that Rausch Creek Generation made good-faith efforts to accommodate Blain's disability. Despite Blain's history of absenteeism, Rausch Creek Generation granted him over two months' leave. (Doc. 56-2 ¶¶ 22, 26). Klinger, Blain's supervisor, checked in on Blain throughout his leave. (Id. ¶¶ 4, 28). Blain reported he was feeling better on April 12 and could return to work on April 19. (Id. ¶ 76). Klinger asked Blain to obtain medical clearance before returning to work, yet Blain failed to obtain such clearance before April 19 or "otherwise respond to Klinger by text or phone call on April 13, 14, 15, 16, or 17." (Id. ¶¶ 77, 80). Blain's response to this delay was simply that he "didn't chase around the doctor trying to get information." (Id. ¶ 84). Nor did he reach out to any other health care professional to obtain such a note. (Id. ¶¶ 85-87). These undisputed facts make clear that Rausch Creek Generation made numerous reasonable accommodations, and therefore Blain's failure to accommodate claims also do not survive summary judgment.

### B. FMLA

Blain also alleges Rausch Creek Generation interfered with his rights under the FMLA "by failing to designate his absence as FMLA-qualifying[;] . . . "by considering his FMLA-qualifying leave of absence in making the decision to terminate him[;] . . . and by firing him to prevent him from taking further FMLA-qualifying leaves." (Doc. 1, ECF 6-7, ¶¶ 9-11). The latter two assertions lack merit as Blain conceded he was fired "due to excessive absenteeism." (Doc. 56-2 ¶ 10; Doc. 60

¶ 10). And before Blain can present the failure-to-designate FMLA interference claim to a jury, he first must establish that the FMLA applies to Rausch Creek Generation. He contends the "integrated employer" and "joint employer" tests demonstrate FMLA coverage attaches to his former employer. (Doc. 61 at 1-8).

This claim cannot survive summary judgment because Blain has not properly developed a dispute in the record. That is because he failed to follow the Middle District of Pennsylvania's local rules. Specifically, Local Rule 56.1 requires the non-moving party to "respond[] to the numbered paragraphs set forth [by the movant]" and does not permit the non-moving party to enumerate additional paragraphs. See M.D. PA. L.R. 56.1. Yet in addition to responding to the paragraphs enumerated by Rausch Creek Generation, Blain included his own paragraphs, styled as his "Statement of Additional Disputed and Undisputed Material Facts," which the rule does not allow. (Doc. 60 at ECF 29-36); M.D. PA. L.R. 56.1. The court therefore disregards these non-compliant additional paragraphs, as well as Rausch Creek Generation's "Response to Plaintiff's Statement of Additional Facts." See Weitzner, 909 F.3d at 613-14; Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu, No. CV 2:14-3362, 2018 WL 585541, at *3 (D.N.J. Jan. 29, 2018) ("disregard[ing] all statements that do not conform to Rule 56 and Local 56.1.").

Blain cites primarily to these additional paragraphs in the section of his brief concerning FMLA coverage. (Doc. 61 at 1-8). To evaluate whether a genuine dispute of material fact exists as to this issue after disregarding these improper citations, the court would need to comb through the voluminous record on its own accord. "'Judges are not like pigs, hunting for truffles buried' in the record." Doeblers' Pa.

Hybrids, Inc. v. Doebler, 442 F.3d 812. 820 n.8 (3d Cir. 2006) (quoting Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys., 309 F.3d 433. 436 (7th Cir. 2002)). The record that is properly before the court does not indicate that the FMLA applies to Rausch Creek Generation under either the integrated employer or joint employer test. Therefore, Rausch Creek Generation will be granted summary judgment on Blain's FMLA claim.

**IV.    Conclusion**

There is no genuine dispute of material fact as to any of Blain's claims. Thus, the court grants summary judgment in Rausch Creek Generation's favor. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    September 29, 2025